George J. LUDDINGTON, Plaintiff,

v.

INDIANA BELL TELEPHONE
CO., Defendant.

No. IP 86–1295–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 23, 1990.

Opinion on Motions to
Reconsider Feb. 1, 1991.

Entry Denying Motion for New Trial,
May 10, 1991.

**1554**

John O. Moss, Moss & Walton, Indianapolis, Ind., for plaintiff.

Gregory J. Utken, Baker & Daniels, Indianapolis, Ind., for defendant.

ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TINDER, District Judge.

This cause comes before the court on defendant Indiana Bell Telephone Company's Motion for Summary Judgment. Plaintiff George J. Luddington, a black employee of Indiana Bell, filed a two-count complaint on November 3, 1986, against his employer for its alleged actions or inactions with respect to his promotion and transfer opportunities. In count I, Luddington alleges race discrimination and retaliation by Indiana Bell in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17. This court has jurisdiction over this claim pursuant to 42 U.S.C. § 2000e–5(f)(3). In count II, Luddington alleges that Indiana Bell denied Luddington the same right to make and enforce contracts as is enjoyed by white citizens of the United States in violation of 42 U.S.C. § 1981. This court has jurisdiction over the second claim pursuant to 28 U.S.C. § 1343.

### I. Standard of Review

Summary judgment, pursuant to Federal Rule of Civil Procedure 56, is properly granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this determination, this court views the record in the light most favorable to the party opposing the motion. *See Morgan v. Harris Trust & Sav. Bank*, 867 F.2d 1023, 1026 (7th Cir.1989) (per curiam). The moving party has the initial burden of demonstrating that absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)). "[A]t the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. A court must enter summary judgment against the non-moving party if, after adequate time for discovery, the party "fails to make a showing sufficient to establish the existence of an ele-

ment essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. at 2552. Furthermore, a factual dispute must. be outcome determinative to preclude summary judgment. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988). Thus, the mere assertion of a factual dispute cannot defeat the motion for summary judgment. *Anderson*, 477 U.S. 242, 106 S.Ct. 2505.

■ Summary judgment is frequently not an appropriate resolution in a Title VII case. *See Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989); *Powers v. Dole*, 782 F.2d 689, 694 (7th Cir.1986). However, summary judgment is not automatically inappropriate simply because issues of discriminatory motive or intent are raised. *See Holland*, 883 F.2d at 1312. As the Seventh Circuit has counselled, this court must approach a question of summary judgment in a discrimination case with special caution. *Id.* at 1313.

II. *Background*

■ Luddington, who has been employed by Indiana Bell since January 1966, was a Level 1 Supervisor[1] at the time material to this litigation and had been since his promotion from an hourly craft worker in 1979. His relatively long employment relationship with Indiana Bell, however, has not been without strife. In 1978, Luddington filed suit against Indiana Bell also alleging race discrimination. Apparently, this suit was settled. He also has filed two other charges of race discrimination against Indiana Bell with the Equal Employment Opportunity Commission (EEOC) and one similar charge with the Indiana Civil Rights Commission. Luddington filed the EEOC charge upon which this suit is based on January 16, 1986. At the last count, Luddington alleges that Indiana Bell discriminated against him in not selecting him for promotion to twenty-eight job positions and for seven transfers. However, Luddington did not inform Indiana Bell that he was alleging discrimination regarding four of the job promotion positions until after discovery was closed and over a month after the filing of the motion for summary judgment. This court finds the defendant's concerns regarding these tardy claims to be of merit, and this court will not allow the plaintiff to raise these new claims, which would require additional discovery. Thus, any claims regarding the following four job openings cannot be pursued in this litigation, though the plaintiff is free to try to pursue them in a different suit: Director–ONA Market Development; Director–Technical Regulatory Liaison; Director–Switched Service Systems; and Director, BOC Personnel Support. This leaves Luddington with claims regarding twenty-four job promotions and seven transfers.

In order to understand the facts surrounding the thirty-one job positions involved in this case, this court will give a brief synopsis of Indiana Bell's procedures for job openings as set forth by the defendant. Indiana Bell has a Management Resource Center (MRC) that maintains information about job openings within Indiana Bell and outside Indiana Bell with other Bell Operating Companies and their affiliate (BOCs). An Indiana Bell employee may visit the MRC to obtain information on job openings, and the MRC also publishes a Management Job Openings List, which is circulated internally.

Once a year, employees complete Form 2930, which lists their backgrounds, experience, qualifications and desires. This information is given to MRC. Thus, if there is a job opening, the MRC, upon request, provides a manager with the names of employees who meet the general qualifications and who have expressed an interest in that

---

**1.** Indiana Bell denominates management by level number—the greater the level number, the higher the position.

area. An employee could also submit his or her name as an applicant for a particular opening.

According to Indiana Bell, it has been down-sizing its work force since the divestiture of AT & T on January 1, 1984. Thus, Indiana Bell states that its policy is that any manager who has a job opening has an obligation to fill it with existing managers at that same level who have the requisite qualifications. If there are no qualified lateral candidates, then the manager may consider candidates for promotion.

The procedures for filling the BOC positions are more complex. According to Indiana Bell, BOC openings were generally delineated either "career" or "rotational" prior to 1988. Career openings meant that an employee selected for the job would become an employee of that BOC permanently. Rotational openings, on the other hand, meant that an employee selected for the job would be an employee of the BOC for a certain number of years and would then return to Indiana Bell at a pre-designated level. This was known as a "buy-back," and Indiana Bell had to agree to it before an employee could be considered for a BOC job. If an Indiana Bell employee was interested in a BOC job opening, he or she would complete an inter-company transfer form and submit it to his or her supervisor. The employee's fifth level supervisor had to approve the request for transfer and a buy-back before he or she could be transferred to a BOC position. All decisions regarding interviews and job selections for a BOC opening were made by the BOC, not by Indiana Bell; however, Luddington states that it was Indiana Bell's responsibility to deliver his applications to the respective BOCs.

Luddington alleges that between 1982 and 1986 he sought promotion or transfer to over thirty jobs and that he was not chosen because of his race and/or in retaliation for his previous charges of discrimination. Luddington cites his high rating on employee evaluations, his employment experience and his educational background[2] as evidence that he was qualified for all of the job openings that he sought. Some openings that would have been promotions were with Indiana Bell, while others were with BOCs. All of the transfers were with Indiana Bell. The management levels of the job openings ranged from Level 2 to Level 4. The job openings and pertinent information are listed below.[3]

| | Promotions | IBT Employer | Mgmt. Level | Other BOC Employer | Date Filled[4] |
|---|---|---|---|---|---|
| 1(a) | Specialist–Personnel | IBT | 2 | — | 06/01/82 |
| 1(b) | Manager (St. Rate Case Support) | — | 2 | BOC | 09/15/83 |
| 1(c) | Associate, Network of the Future | — | 2 | BOC | 02/15/84 |
| 1(d) | Specialist, Personnel | IBT | N/A[5] | — | 12/31/83 |

2. While working at Indiana Bell, Luddington earned a law degree and was admitted into the Indiana State Bar in 1985.

3. This court will use the numbering system used by the parties in identifying the job openings as to the promotions. This court has continued the numbering system as to the transfers.

4. These are the dates that Indiana Bell contends that each position was filled. Luddington states in his affidavit, however, that these dates were the "desired report dates" on the Requests for Management Personnel, i.e., the *projected* dates that each opening would be filled. According to the plaintiff, the actual employment selection was often made up to six months after the date printed on the job announcement. Thus, the plaintiff contests the accuracy of many of these dates.

5. The defendant uses this designation, but it is unclear whether the information is "not applicable" or "not available." For example, Susan Hall, an employee of Indiana Bell in Human Resources, states in her affidavit that position 1(d) Specialist–Personnel was consolidated with an existing job on 12/31/83, but she did not designate the level of the job. Similarly, the level of position 2(a) Law Clerk was not given. It appears, however, that the Law Clerk position was being filled on a part-time basis by law students. Based on this information, this court will assume that "N/A" means "not applicable."

| Promotions | IBT Employer | Mgmt. Level | Other BOC Employer | Date Filled |
|---|---|---|---|---|
| 1(e) District Manager–Network Planning | — | 3 | BOC | 04/10/84 |
| 1(f) Manager (Comptroller) (# 95) | IBT | 2 | — | 09/01/84 |
| 1(g) Manager (Comptroller) (# 69) | IBT | 2 | — | 07/01/84 |
| 1(h) Manager (Network) | IBT | 2 | — | 12/01/84 |
| 1(i) Public Affairs | — | 3/4 | BOC | 10/01/84 |
| 1(j) Director, Federal Regulatory | — | 3 | BOC | 08/01/84 |
| 1(k) Claims Representative (# 24) | IBT | 1 | — | 09/24/85 |
| 1(l) Specialist–Personnel (# 36) | IBT | 2 | — | 07/01/85 |
| 1(m) Temporary Specialist–Personnel | IBT | 2 | — | 08/05/85 |
| 1(n) Manager (Labor Relations | — | 2 | ·BOC | 08/01/83 |
| 1(o) District Manager–NECA | — | 3 | BOC | 09/24/84 |
| 1(p) Attorney | IBT | 4 | — | 05/85 |
| 1(q) Manager (Labor Relations | — | 2 | BOC | 01/01/86 |
| 1(r) Supervisor, Tax Research & Planning | — | 3 | BOC | 04/01/86 |
| 1(s) Manager, Affirmative Action & EEO | — | 3 | BOC | 12/01/86 |
| 1(t) Manager (Network) | IBT | 2 | — | 10/01/85 |
| 1(u) Manager (Network) | IBT | 2 | — | 12/15/85 |
| 1(v) Manager (Personnel) (# 57) | IBT | 2 | — | 09/16/85 |
| 1(w) Manager (Marketing) (# 138) | IBT | 2 | — | 01/01/85 |
| 1(x) Manager (Marketing) | IBT | N/A | — | 08/85 |

| Transfers | IBT Employer | Mgmt. Level | Other BOC Employer | Date Filled |
|---|---|---|---|---|
| 2(a) Law Clerk | IBT | N/A | — | 1984–85 |
| 2(b) Scan Alert/Packet Switching [6] | IBT | 1 | — | 01/16/85 |
| 2(c) Staff Associates, Regulatory (# 118) | IBT | 1 | — | 12/20/84 |
| 2(d) Rate Associate, Regulatory (# 130) | IBT | 1 | — | 10/16/84 |
| 2(e) Staff Associate, Comptroller (# 131) | IBT | 1 | — | 10/29/84 |

**6.** In one of the charts summarizing all of the job openings in the Defendant's Replacement Summary Judgment Memorandum, the defendant lists the transfer position of Scan Alert/Packet Switching twice and argues that the Title VII claim regarding the first is barred because Luddington did not include it in his EEOC charge and that the Title VII claim regarding the second is barred because of no EEOC charge and the failure to meet the 300–day statute of limitations. However, this court cannot find in the record where the plaintiff applied for this job two separate times. It appears from the Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment that he only applied for the Scan Alert/Packet Switching once in 1984. Indiana Bell asserts that the decision to fill the job, which was part of a new program, was delayed until Indiana Bell decided whether to proceed with the start of the new program. It is not clear when the vacancy was filled, but the defendant was denied the position in 1984. This court will assume, based upon the record, that there were not two different applications or job positions involved.

| Transfers | IBT Employer | Mgmt. Level | Other BOC Employer | Date Filled |
|---|---|---|---|---|
| 2(f) Bell Independent Relations (# 20) | IBT | 1 | — | 08/21/84 |
| 2(g) Tariff/Costs–Rate Assoc. (# 84 & 109) | IBT | 1 | — | 07/02/84 |
| | | | | 09/16/84 |

---

### III. *Discussion*

Because of the numerous job positions involved and the multiple legal theories alleged, the discussion will be structured in order to minimize the confusion inherent in addressing so many issues. This court will discuss first the plaintiff's section 1981 claims according to the following outline.

A. Section 1981

 i. *Statute of limitations*

 ii. *Significance of Patterson v. McLean Credit Union*[7]

 iii. *Merits of remaining claims*

 a. Refusal-to-promote claims

 b. Retaliation claims

Second, this court will discuss the plaintiff's Title VII claims as set forth below.

B. Title VII

 i. *Statute of limitations*

 ii. *Claims included in the EEOC charge*

 iii. *Merits of remaining claims not already discussed under the section 1981 merits*

The conclusion of this entry provides charts that summarize the court's holdings as to each job opening under both section 1981 and Title VII. Thus, the parties may refer to it for clarification.

A. Section 1981

While Indiana Bell seeks summary judgment as to all of the claims based upon various legal arguments, this court will first address Luddington's section 1981 claims under count II of his complaint. Section 1981 reads as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

It appears that Luddington is asserting the following claims pursuant to section 1981: racial harassment; disparate treatment; disparate impact; and retaliation. Indiana Bell presents four arguments as to why it is entitled to summary judgment on count II of Luddington's complaint: (1) Indiana Bell was not the employer regarding ten of the promotion job openings; (2) acts prior to November 3, 1984, are barred under the applicable statute of limitations; (3) all of the claims fail in light of the United States Supreme Court's holding in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); and (4) all of the claims fail on their merits.

i. *Statute of limitations*

■ A two year statute of limitations applies to this section 1981 claim. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Movement for Opportunity & Equality v. General Motors Corp.*, 622 F.2d 1235, 1241–44 (7th Cir.1980). Luddington filed his complaint on November 3, 1986; thus, any acts occurring prior to November 3, 1984, are seemingly barred.

---

7. 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

Luddington asserts that those claims that arose two years prior to the filing of the complaint may be properly pursued and cites to *Waters v. Wisconsin Steel Works of Int'l Harvester Co.*, 502 F.2d 1309, 1315 (7th Cir.1974), though this case did not so hold and, thus, is inapposite. He then argues that the dates cited above in which the openings were supposedly filled were the dates that the openings were expected to be filled, but that in reality many of the employment decisions were not made for at least six months after the date listed. Thus, the allegedly discriminatory employment decisions occurred later than the dates listed in some circumstances. In an affidavit, Luddington lists several job openings that he contends were filed within the two year statute of limitations; however, only two of the jobs that Luddington lists were challenged by the defendant as falling outside of the two year statute of limitations. Construing these facts most favorably for the non-moving party, Luddington has still failed to show how the remaining eight promotion job openings and three transfer job openings fall within the two year statute of limitations. Thus, any claims under section 1981 regarding the following promotion and transfer job openings are time-barred: 1(a) Specialist–Personnel; 1(b) Manager (St. Rate Case Support); 1(c) Associate, Network of the Future; 1(d) Specialist, Personnel; 1(f) Manager (Comptroller); 1(g) Manager (Comptroller); 1(j) Director, Federal Regulatory; 1(n) Manager (Labor Relations); 2(d) Rate Associate, Regulatory; 2(e) Staff Associate, Comptroller; 2(f) Bell Independent Relations; and 2(g) Tariff/Costs–Rate Associate. This leaves Luddington with claims regarding sixteen promotion and three transfer openings.

ii. *Significance of Patterson v. McClean Credit Union*

■ The Supreme Court's recent holding in *Patterson* shut the door on many section 1981 employment discrimination claims, though the Court cracked a window for those claims of racial discrimination in promotions. In *Patterson*, a black former employee of a credit union sued her employer under section 1981 claiming that the employer harassed her, failed to promote her and discharged her all because of her race. In pertinent part, the Court held that the racial harassment claim was not actionable under section 1981, which extends only to conduct at the initial formation of the contract, "not to problems that may arise later from the conditions of continuing employment." *Patterson,* 109 S.Ct. at 2372. Thus, to the extent that Luddington pleads in his complaint that he was harassed in violation of section 1981, this claim is no longer viable. However, the Court stated that the employee's claim that the employer failed to promote her, because of race, from a teller and a file coordinator to an intermediate accounting clerk was "a different matter." *Id.* at 2377. The Court went on to state as follows:

> [T]he question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981. In making this determination, a lower court should give a fair and natural reading to the statutory phrase "the same right ... to make ... contracts," and should not strain in an undue manner the language of § 1981. Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981. Cf. *Hishon v. King & Spaulding* [sic], 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (refusal of law firm to accept associate into partnership) (Title VII).

*Id.*

Several courts have decided cases involving promotion claims since the holding in *Patterson* and have had to face the question of whether a given promotion presents a "new and distinct relation" and thus is an actionable claim under section 1981. For example, the Fourth Circuit concluded, with little discussion, that "[p]romotion from clerk to supervisor with a consequent

increase in responsibility and pay satisfies this test." *Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908 (4th Cir. 1989).

In *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989), a Seventh Circuit panel, in three separate opinions, discussed the application of *Patterson* to promotion cases, but did not reach a decision on that issue. *Malhotra*, 885 F.2d at 1311–12. Judge Posner stated that one possible interpretation of the "new and distinct relation" test would distinguish between those job positions that accepted applications from inside, as well as outside, of the firm and those job promotions that were "the sort of routine advancement that only existing employees qualify for." *Id.* at 1311. Judge Posner then cited an example of the latter situation where a federal employee receives an in-grade promotion, which involves a raise in salary, but not a new job with new responsibilities; this "promotion" would not be a sufficiently "new and distinct relation" to bring a claim under section 1981. *Id.*

Another interpretation of the "new and distinct relation" test focuses on whether the terms of the contractual relationship between the employee and the employer would change. *Id.* Finally, a third interpretation of the *Patterson* language focuses on whether the promotion would involve a substantial change in the employee's job responsibilities. *Id.* at 1317 n. 6 (Cudahy J. concurring).

Indiana Bell points to the holding in a Northern District of Illinois case in which an Assistant Director of Housekeeping, who was black and was not selected to become the Director of Housekeeping, sued for discrimination under both Title VII and section 1981. *Crader v. Concordia College*, 724 F.Supp. 558 (N.D.Ill.1989). Judge Shadur held, in part, that *Patterson* barred the plaintiff's section 1981 claim. Noting the Supreme Court's reference to the *Hishon* case, which dealt with a Title VII claim against a law firm refusing to accept an associate into the partnership, Judge Shadur wrote:

While a promotion to Director might perhaps have represented a substantial increase in responsibility and authority for [the plaintiff] (a matter in some dispute between the parties), in any event it would not have fundamentally altered the quality of his relationship with [the employer] in any way comparable to the move from associate to partner in a law firm—it would not have "involved the opportunity to enter into a new contract with" [the employer] or the "opportunity for a new and distinct relation" in the sense called for by the most reasonable reading of that language in *Patterson*.

*Crader*, 724 F.Supp. at 563.

Another Northern District of Illinois court also faced the issue, though the facts were less strong for the plaintiff, in which the court held that the "promotion" of an employee from probationary to tenured status was not a "new and distinct relation," especially when the employee would have performed the very same functions regardless of his status. *Sofferin v. American Airlines, Inc.*, 717 F.Supp. 597, 599 (N.D.Ill.1989).

■ After considering the Supreme Court's discussion in *Patterson* and the subsequent lower court rulings cited above, this court holds that only those jobs that would have provided an increase in management level and significantly different responsibilities rise to the level of a "new and distinct relation" that are sufficient claims under section 1981. These criteria are intended to exclude those jobs in which an employee, for example, supervises a growing department. While such an employee may go from supervising a few to· many employees and may receive a concomitant increase in salary, this is not a "promotion" under the *Patterson* framework. Additional responsibilities are not sufficient; an employee must assume responsibilities that are distinctly different from the previous job, along with an increase in the level of the job.

■ This framework also excludes those jobs that are lateral transfers that merely involve new duties without significant changes in management level and the

amount or type of responsibilities. *See White v. Federal Express Corp.*, 729 F.Supp. 1536 (E.D.Va.1990) (applying the "contract test" set forth in *Malhotra* and holding that a section 1981 claim concerning the denial of a job change was more in the nature of a lateral transfer than a promotion and, thus, barred by *Patterson*); *Brown v. Avon Prods., Inc.*, 1989 WL 122334 (N.D.Ill.1989) (noting that a failure-to-transfer claim clearly fails the tests stated in *Patterson*). This court agrees with District Judge Ellis that if this court interpreted the "new and distinct relation" test to allow claims regarding lateral transfers, "virtually all requests for changes in job assignments would be swept back within the ambit of § 1981, a result at odds with the thrust of *Patterson*." *White*, 729 F.Supp. 1536.

Therefore, based upon these criteria and the information in the record at this point, all of the jobs that fall within the two-year statute of limitations are viable promotion claims under *Patterson* except for 1(k) Claims Representative, which was a Level 1 job and would not have been an increase in management level for Luddington, and the three transfers, which were essentially lateral openings.

■ While the BOC jobs technically involved an employment contract with an employer other than Indiana Bell, the section 1981 claims regarding these jobs are still viable under *Patterson* as to Indiana Bell's alleged actions in the processing of Luddington's applications.

### iii. *Merits of remaining claims*

■ Finally, this court must decide if summary judgment is appropriate on the merits of the section 1981 claims, which involve the remaining fifteen promotions. In order to prevail on his section 1981 claims, the plaintiff must prove that he was the victim of intentional racial discrimina-

tion in connection with the making or enforcing of an employment contract.[8] Luddington must make such a showing by following the methods and burdens of proof that are applicable to claims under Title VII. *See Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 568 (7th Cir. 1989). This showing may be made either by direct proof of discriminatory intent or by the method of indirect proof as set forth in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See Lynch v. Belden & Co.*, 882 F.2d 262, 268 (7th Cir. 1989), *cert. denied*, 493 U.S. 1080, 110 S.Ct. 1134, 107 L.Ed.2d 1040 (1990). Direct evidence of a racially discriminatory motive consists of actions or remarks by the defendant that reflect a discriminatory attitude in the employment decision-making process. *See Crader*, 724 F.Supp. at 564–65. The indirect method of proof as outlined in *Burdine* and *McDonnell Douglas Corp.* allows a plaintiff to raise an inference of discriminatory intent when there is no direct evidence available. *See Lynch*, 882 F.2d at 269. Under this indirect method, the plaintiff first has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093. If the plaintiff succeeds in proving the prima facie case, a rebuttable presumption arises, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its employment action. *Id.; McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. Should the defendant carry this burden, the presumption raised by the prima facie case is rebutted. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094–95. The plaintiff must then prove by a preponderance of the evidence

---

**8.** Because discrimination must be intentional under section 1981, no cause of action is stated for disparate impact. *See Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 111 (1st Cir.1988) ("A plaintiff may not make a disparate impact claim under section 1981 since actions involving disparate impact can include practices which are neutral not only on their face but in terms of intent."); *cf. Dugan v. Ball State Univ.*, 815 F.2d 1132, 1135 n. 1 (7th Cir.1987) ("A section 1983 equal protection violation requires a showing of intentional discrimination, thus foreclosing a disparate impact claim.")

that the legitimate reasons offered by the defendant were not its true reasons, but were merely a pretext for discrimination. *Id.* at 252–53, 101 S.Ct. at 1093; *see also Reeder–Baker v. Lincoln Nat'l Corp.*, 834 F.2d 1373, 1376–77 (7th Cir.1987); *Collins v. State of Illinois*, 830 F.2d 692, 698 (7th Cir.1987).

 The record in this case fails to reveal any direct evidence of discrimination on the basis of race in the consideration of Luddington's employment applications. Thus, Luddington can prevail only by utilizing the *McDonnell Douglas Corp.—Burdine* method of indirect proof. Focusing on this three step method of proof, this court will address the merits of the plaintiff's section 1981 claims for retaliation and disparate treatment involving the remaining fifteen promotion opportunities. In order for the plaintiff to establish a prima facie case regarding his refusal-to-promote claims, he must show by a preponderance of the evidence that he was a member of a protected class, that he applied for promotion and was qualified, that despite his qualifications he was rejected, and that others not in the protected class but with the plaintiff's or lower qualifications were promoted. *See Bigby v. City of Chicago*, 766 F.2d 1053 (7th Cir.1985). In order for the plaintiff to establish a prima facie case of retaliation, he must show by a preponderance of the evidence that he engaged in statutorily protected activity, that the employer took an adverse personnel action, and that a causal connection existed between the above two actions. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 369 n. 4, 99 S.Ct. 2345, 2347 n. 4, 60 L.Ed.2d 957 (1970); *Jennings v. Tinley Park Community Consol. School Dist. Number 146*, 796 F.2d 962, 966–67 (7th Cir.1986), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987).

### a. Refusal-to-promote claims [9]

 Of the plaintiff's remaining claims, he applied for six BOC job openings. Indiana Bell states that the employment decisions for the BOC job openings were made by the respective BOCs and not by Indiana Bell; thus, Indiana Bell argues that it cannot be held accountable for decisions made by other employers. Luddington argues that he is not trying to hold Indiana Bell accountable for the decisions of the BOCs; rather his complaints go toward Indiana Bell's actions or inactions. He alleges that the defendant failed to deliver his applications to the BOCs because of his race and/or in retaliation for his previous charges against the defendant. In the plaintiff's response to the defendant's motion for summary judgment, the plaintiff states there is a question of material fact and cites to specific portions of depositions. However, the plaintiff does not meet his burden on his refusal-to-promote claim because he fails to show that the defendant did deliver the applications of similarly or lower qualified non-minority persons to the BOCs for consideration of employment as to those six specific jobs to which the plaintiff had also applied.[10] Furthermore, as the defendant points out, Luddington testified in his deposition that he was not aware of any instance, except for one that involved a human resources Level 3 BOC job, in which an Indiana Bell employee did not pursue Luddington's interest in job openings. The plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Thus, summary judgment will be granted for the defendant on the plaintiff's section 1981 refusal-to-promote claims as to the following BOC job openings: 1(e) District Manag-

**9.** Only the merits of those claims that are not barred by the statute of limitations or that are not viable after *Patterson* will be addressed. However, this is not a determination that those claims that are barred for other reasons are otherwise meritorious.

**10.** The plaintiff states in his affidavit that "[t]he applications (promotion and transfer) of white employees of defendant, and defendant employees who had not filed charges against defendant, were delivered to said companies for consideration on enhanced employment opportunities." However, the plaintiff does not state whether these white employees' qualifications were superior to, equal to, or less than Luddington's qualifications.

er–Network Planning; 1(i) Public Affairs; 1(o) District Manager–NECA; 1(q) Manager (Labor Relations); 1(r) Supervisor, Tax Research & Planning; and 1(s) Manager, Affirmative Action & EEO.

■ With regards to the job opening 1(h) Manager (Network), the plaintiff does not even discuss the merits in his memorandum in opposition to the defendant's motion for summary judgment or in his affidavit. He does argue that this job was inappropriately listed by the defendant as one that was barred by the statute of limitations, which the defendant subsequently admitted. However, Luddington does not show in his pleadings that he was specifically qualified for the position or that Indiana Bell filled the position with someone with the same or less qualifications than the plaintiff. Thus, Luddington has failed to present a prima facie case of a failure-to-promote discrimination claim under section 1981 regarding the 1(h) Manager (Network) position.

Questions of material fact exist as to the job opening designated 1(1) Specialist–Personnel. The plaintiff contends that he was told that no promotions would be made to fill this Level 2 management position, but that the white male who was ultimately hired was promoted. The defendant, on the other hand, asserts that no Level 1 supervisors, black or white, were considered and that the person selected was not promoted to the position. Thus, the section 1981 failure-to-promote claim regarding job 1(1) Specialist–Personnel survives summary judgment.

■ The plaintiff has failed to make out a prima facie case regarding job opening 1(m) Temporary Specialist–Personnel. The plaintiff acknowledges that Frank Thomas filled the position while the employee who normally filled the position went on maternity leave. The defendant states, and the plaintiff does not refute, that Thomas (as

well as the employee who went on maternity leave) are black. Thus, Luddington has failed to show that someone not in the protected class, i.e., black, but with the plaintiff's or lower qualifications was promoted.

Again, Luddington has failed to allege a prima facie case regarding position 1(p) Attorney because he does not show that someone other than a black person was subsequently chosen to fill the vacancy. Luddington asserts, without citing to any evidence in the record, that "the defendant allowed two of the white attorneys, who worked for it to transfer to its legal department...." While there seems to be a question of fact as to whether Indiana Bell had a policy to hire persons for this position who had practiced law outside of Indiana Bell,[11] the plaintiff still fails to allege that these two white attorneys were hired for the specific position to which he had applied. Indeed, Thomas J. Reiman, vice president and general counsel of Indiana Bell, states in his affidavit that Joset Wright–Lloyd, a black attorney with practice experience outside Indiana Bell, was hired for the position, and the plaintiff does not dispute this.

The next two job openings, 1(t) Manager (Network) and 1(u) Manager (Network), will be discussed together because they involve the same job that was filled twice in the span of a few months. There is a question of material fact as to these two positions regarding whether the two white males who were hired to fill the position were equally or less qualified than Luddington. The defendant states that Luddington's law degree was irrelevant because it was not a requirement for the position, but the plaintiff cites his experience with Indiana Bell in comparison with the two candidates who were chosen, which appears to be more extensive and would make him more qualified. Thus, the fail-

---

**11.** Luddington cites to deposition testimony of attorney Richard Creedon in which Creedon states that an attorney, Mr. Westerhaus, did transfer into the legal department from another Indiana Bell department. Indiana Bell asserts that it only hires attorneys for its legal depart-

ment who have practice experience outside of Indiana Bell. While there appears to be a question of fact regarding this issue, it is irrelevant as to the failure-to-promote claim because of Luddington's inadequate showing of a prima facie case.

ure-to-promote claims as to these two positions survive summary judgment.

Luddington fails to support his allegations regarding position 1(v) Manager (Personnel). He asserts that Elaine Lucas, a white female, was "promoted" to the position after he was told that his application would not be considered because no promotion would be made. However, Luddington fails to cite to any portion of the record that supports his assertion that Lucas was promoted. The plaintiff cannot make unsupported allegations in order to survive a motion for summary judgment. Thus, Luddington may not raise a failure-to-promote claim regarding the position 1(v) Manager (Personnel).

■ The plaintiff fails to raise a sufficient claim regarding the position 1(w) Manager (Marketing). He makes unsupported allegations and speculations that do not overcome summary judgment. Luddington testified in his deposition that after he inquired about the job, his supervisor reported to him shortly thereafter that the position had already been filled by a lateral Level 2 manager who appeared on a list of Level 2 "surplus" managers. There is nothing in the record that refutes this. Luddington speculates that such a list is nonexistent and merely a pretext to cover unlawful discrimination and retaliation. However, speculation is insufficient to overcome summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

■ Luddington's failure-to-promote claim regarding position 1(x) Manager (Marketing) is wholly insufficient. He alleges, without any evidentiary support, that he was performing this Level 1 job, which involved duties similar to those duties characteristic of Level 2. When his supervisor asked him if he wanted to remain in the position, Luddington responded that he would accept the job only if it was re-classified as a Level 2 position. Indiana Bell had no plans to elevate the job from Level 1 to Level 2, and no one subsequently

was promoted to that position as a Level 2 manager. Luddington cannot expect Indiana Bell to create a new Level 2 management position in marketing simply because he thinks that they should and then successfully allege discriminatory treatment when Indiana Bell does not do so.[12]

In summary, this court finds that the plaintiff has not established a section 1981 failure-to-promote racial discrimination claim as to twelve of the fifteen promotion openings. Thus, the plaintiff's only remaining claims under this theory are the following: 1(1) Specialist–Personnel; 1(t) Manager (Network); and 1(u) Manager (Network).

b. Retaliation claims

■ The plaintiff has alleged that he had conversations at different times with three Indiana Bell management employees—Sy Butler, William Overby and Phil Junker—who made retaliatory comments along the lines that his pursuit of racial discrimination claims against Indiana Bell may limit his future at the company. Assuming that these comments were made, Luddington must show that these individuals participated in the decision-making process regarding the Luddington's job applications. *See La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1412 (7th Cir.1984). However, the record does not reveal that any of the individuals participated in the decision-making process nor discussed Luddington's applications for the jobs with the decision-makers, with the exception of two job openings in which Junker was involved.

Luddington alleges that he talked with Junker in the fall of 1985 when Junker told him that he was perceived as a high risk due to his previous litigation. Junker was involved in the decision-making process as to the job openings 1(m) Temporary Specialist–Personnel and 1(v) Manager (Personnel). It also appears from the record that both of these positions were filled in

---

12. This is not a situation in which the employer abolished a position to avoid filling it with a qualified black candidate. *See Crader*, 724 F.Supp. at 565 (black employee made out a prima facie case of discrimination by showing that a position for which he was qualified was eliminated).

the fall of 1985.[13] This temporal sequence establishes a sufficient causal link to survive summary judgment. Therefore, the section 1981 retaliation claim may be raised as to these two job positions, but not as to the others.

### B. Title VII

Indiana Bell argues that all of the claims brought pursuant to Title VII should be dismissed for the following reasons: (1) those claims involving actions prior to April 12, 1985, were not timely filed; (2) those claims not included in an administrative EEOC charge may not be pursued in this court; and (3) any remaining claims fail on the merits.

#### i. *Statute of limitations*

 Title VII claims brought in Indiana are generally subject to a 300–day period of limitation. *See* 42 U.S.C. § 2000e–5(e). The statute of limitations runs from when the employee is notified of a discriminatory employment decision, not from when the employee is affected. *Dugan v. Ball State Univ.*, 815 F.2d 1132, 1134 (7th Cir.1987). Furthermore, a claim that a discriminatory act occurred prior to the statute of limitations, but had an effect that occurred during the limitations period, is not timely. *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989).

 In this case, Indiana Bell cites twelve promotion jobs and six transfer jobs that involve Title VII claims that are barred by the 300–day statute of limitations. Luddington does not contest that these claims fall outside of the 300–day time period, but argues that these are "like or reasonably related to the allegations of the charge" so as to be properly brought before this court.

The Seventh Circuit has stated that "the judicial complaint in a Title VII case can embrace not only the allegations in the administrative charge but also ' "discrimination like or reasonably related to the allegations of the charge and growing out

of such allegations" ' " *Malhotra*, 885 F.2d at 1312 (quoting *Hemmige v. Chicago Pub. Schools*, 786 F.2d 280, 283 (7th Cir. 1986)). In *Malhotra*, the Seventh Circuit held that the plaintiff's claim regarding racial harassment was barred in the Title VII action because he had only alleged failure to promote, not racial harassment, in his administrative charge. However, the Court went on to hold that the plaintiff's failure to include retaliation in his administrative charge was not fatal and adopted the general ruled that "a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge." *Id.* at 1312.

The doctrine of "like or reasonably related," however, has nothing to do with the statute of limitations, but rather the substantive scope of the lawsuit. In this case, unlike *Malhotra*, the plaintiff is trying to pursue claims that fall outside of the statute of limitations. While these claims that are outside of the statute of limitations may or may not be "like or reasonably related" to those claims in the EEOC charge, Luddington cannot use this doctrine to avoid a statue of limitations bar. As Judge Shadur stated in *Proffit v. Keycom Elec. Publishing*, 625 F.Supp. 400, 408 (N.D.Ill.1985), the plaintiff cannot use the " 'like or reasonably related' standard to work backward in time, thus circumventing the statutory filing deadlines. Carried to its logical extension, [this] argument would abolish the whole notion of limitations—for any new act of discrimination would dredge up and render actionable every long-outlawed historical occurrence of the same kind."

Therefore, the plaintiff's EEOC claims regarding the following job openings are barred by the 300–day limitations period:

*Promotions:*

1(a) Specialist–Personnel

1(b) Manager (St. Rate Case Support)

1(c) Associate, Network of the Future

1(d) Specialist, Personnel

1(e) District Manager–Network Planning

---

**13.** According to the affidavit of Susan Hall, who was employed in Human Resources, job 1(m) was filled on 8/5/85 and job 1(v) was filled on 9/16/85.

1(f) Manager (Comptroller)

1(g) Manager (Comptroller)

1(h) Manager (Network)

1(i) Public Affairs

1(j) Director, Federal Regulatory

1(n) Manager (Labor Relations)

1(o) District Manager–NECA

*Transfer*

2(b) Scan Alert/Packet Switching

2(c) Staff Associate, Regulatory

2(d) Rate Associate, Regulatory

2(e) Staff Associate, Comptroller

2(f) Bell Independent Relations

2(g) Tariff/Costs–Rate Associate

This leaves the plaintiff with EEOC claims as to twelve promotions and one transfer that are not barred by the statute of limitations.

ii. *Claims included in the EEOC charge*

■■■■ The filing of charges with the EEOC and the receipt of a right to sue letter are necessary prerequisites to pursuing any Title VII claim in federal district court. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Movement for Opportunity & Equality v. General Motors Corp.,* 622 F.2d 1235, 1238 (7th Cir.1980). The nature of the charge before the EEOC affects the scope of the court's jurisdiction. "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge...." *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir.1985). The only claims that are cognizable are those in the EEOC charge and those that are " 'like or reasonably related to the allegations of the charge and growing out of such allegations.' " *Id.* at 864 (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.) (en banc), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976)); *see also Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 127 (7th Cir. 1989); *Gamble v. Birmingham S. R.R.*

*Co.,* 514 F.2d 678, 687–89 (5th Cir.1975); *Flesch v. Eastern Pennsylvania Psychiatric Inst.,* 434 F.Supp. 963, 970 (E.D.Pa. 1977). Thus, while the extent of an EEOC investigation may help define the scope of the charge, it will not necessarily defeat a complaint where the complaint contains allegations that are like or reasonably related to the EEOC charge. *Schnellbaecher,* 887 F.2d at 127.

Luddington filed a charge with the EEOC on January 15, 1986, regarding the following jobs: 1(k) Claims Representative; 1(m) Temporary Specialist–Personnel; 1(p) Attorney; 1(t) Manager (Network); 1(u) Manager (Network); and 1(w) Manager (Marketing) or 1(x) Manager (Marketing). The defendant argues that all other claims not cited in the EEOC charge are, therefore, barred. The plaintiff, on the other hand, argues that his EEOC charge alleged that Indiana Bell denied him consideration for promotional opportunities due to his race and retaliated against him for having protested its discriminatory employment practices. Thus, the plaintiff argues that all of his claims, including those not specifically mentioned in the charge, are "like or reasonably related to the allegations of the charge" so as to be properly brought before this court. *See Flesch v. Eastern Pennsylvania Psychiatric Inst.,* 434 F.Supp. 963, 970 (E.D.Pa.1977).

■■■■ This court must determine what EEOC investigation could reasonably be expected to grow from the original charge. *See Schnellbaecher,* 887 F.2d at 127. There are five promotion and two transfer job claims that are not specifically included in Luddington's EEOC charge and that are not already barred by the 300–day statute of limitations. All of the jobs involve allegations of race discrimination and/or retaliation in the promotion or transfer of the plaintiff. However, all of these job openings and the alleged accompanying discriminatory acts occurred before the filing of the charge. Thus, this not like a situation in which the Title VII plaintiff is attempting to include a claim that was not included in the EEOC charge because the alleged discriminatory acts

were in response to the filing of the EEOC charge. *See Flesch*, 434 F.Supp. at 970. This is also not like a situation in which we have an unsophisticated plaintiff who is unfamiliar with the EEOC process or who is inarticulate and unable to thoroughly describe the discriminatory practices. *Cf. Jenkins*, 538 F.2d at 167–68 (noting that Title VII is to be construed broadly because EEOC charges are in "layman's language," unassisted by trained lawyers); *Gamble*, 514 F.2d at 688–89 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir.1970)) ("We must ever be mindful that the provisions of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees. This protection must be extended to even the most unlettered and unsophisticated."). Luddington has filed previous EEOC charges, which are not the subject of this law suit, and he is an attorney himself. Thus, this court finds that the Title VII challenges regarding those jobs not listed in the EEOC charge are not sufficiently related to the claims in the EEOC charge and are therefore barred. Furthermore to the extent that the plaintiff is trying to introduce a harassment theory or a disparate impact theory, this would unduly expand the substantive scope of this lawsuit beyond the claims in the EEOC charge, and therefore, both theories are also barred.

### iii. *Merits of remaining claims not already discussed under the section 1981 merits*

Finally, this court must decide if summary judgment is appropriate on the merits as to the remaining Title VII claims. As already noted, in most instances the methods and burdens of proof are the same for claims under section Title VII and section 1981. *See Randle*, 876 F.2d at 568. This court has analyzed the merits of those claims brought pursuant to section 1981 that were not barred for other reasons. To the extent that the same claims are also brought pursuant to Title VII and not otherwise barred by Title VII's statute of limi-

tations, the analysis of the merits would not change. Accordingly, this court will only analyze the merits of those claims involving job openings that were not analyzed in the section 1981 portion of this entry and that are not barred for other reasons already discussed.

 With regards to job position 1(k) Claims Representative, the plaintiff does not offer any material evidence that the reasons given in deposition testimony by Richard Creedon, Indiana Bell's in-house Claims Attorney, for Creedon's decision to hire William Wermund and not Luddington were pretextual. Thus, Luddington's Title VII racial discrimination claim as to job position 1(k) Claims Representative is not viable. Similarly, since Luddington fails to present any evidence that a person in the decision-making process with respect to this job made a retaliatory statement, his Title VII retaliation claim also fails.

The last position that this court must review as to the merits involves the transfer to job 2(a) Law Clerk. There is a question of material fact as to when the plaintiff inquired about the 2(a) Law Clerk position, i.e., before or after he graduated from law school, and the plaintiff meets his burden to survive summary judgment because he alleges that only lower qualified, white law students were hired to fill the position. The defendant states that no attorneys have ever been hired as 2(a) Law Clerks, but Luddington states in his deposition that he was willing to take a cut in pay for the experience. Thus, Luddington's Title VII racial discrimination claim as to the 2(a) Law Clerk opening survives summary judgment. However, as stated above, Luddington does not make out a claim of retaliation because he fails to allege that a decision-maker with respect to this job made retaliatory statements.

In summary, Indiana Bell's summary judgment motion will be granted as to twelve promotions and six transfers because the claims regarding those position fall outside Title VII's 300–day statute of

# 1568

limitations. This court will grant summary judgment as to five promotion openings and one transfer opening [14] because these were not included in the EEOC charge. As to the remaining claims, this court will grant summary judgment as to six promotions and one transfer on the plaintiff's retaliation theory and as to five promotions on the plaintiff's racial discrimination theory. As the chart below indicates, this leaves the plaintiff with Title VII racial discrimination claims as to two promotions and one transfer and with a Title VII retaliation claim as to one promotion.

## III. *Conclusion*

Based on all of the aforementioned reasons, this court GRANTS IN PART AND DENIES IN PART the defendant's motion for summary judgment. In order to aid the parties and this court in keeping track of the claims that are and are not barred, the first table summarizes this court's holdings as to Luddington's section 1981 claims. The second table summarizes this court' holdings as to Luddington's Title VII claims. Those job openings with an "X" beside them are barred in whole or in part for the reason set forth by the particular column in which the "X" is placed.

### SECTION 1981

| | Promotion | Patterson | 2–Year Statute of Limitations | No Retaliation Claim | No Refusal to Promote Claim |
|---|---|---|---|---|---|
| 1(a) | Specialist–Personnel | | X | | |
| 1(b) | Manager (St. Rate Case Support) | | X | | |
| 1(c) | Associate, Network of the Future | | X | | |
| 1(d) | Specialist, Personnel | | X | | |
| 1(e) | District Manager–Network Planning | | | X | X |
| 1(f) | Manager (Comptroller) (# 95) | | X | | |
| 1(g) | Manager (Comptroller) (# 69) | | X | | |
| 1(h) | Manager (Network) | | | X | X |
| 1(i) | Public Affairs | | | X | X |
| 1(j) | Director, Federal Regulatory | | X | | |
| 1(k) | Claims Representative (# 24) | X | | | |
| 1(l) | Specialist–Personnel (# 36) | | | X | |
| 1(m) | Temporary Specialist–Personnel | | | | X |
| 1(n) | Manager (Labor Relations) | | X | | |
| 1(o) | District Manager–NECA | | | X | X |
| 1(p) | Attorney | | | X | X |
| 1(q) | Manager (Labor Relations) | | | X | X |
| 1(r) | Supervisor, Tax Research & Planning | | | X | X |
| 1(s) | Manager, Affirmative Action & EEO | | | X | X |
| 1(t) | Manager (Network) | | X | | |

**14.** The transfer position, 2(b) Scan Alert/Packet Switching, has already been barred by the applicable statute of limitations. Because there may be a dispute as to whether there were two such positions, one of which may not have been barred by the statute of limitations, this court also finds that both are barred because they were not included in the EEOC charge.

| Promotion | Patterson | 2–Year Statute of Limitations | No Retaliation Claim | No Refusal to Promote Claim |
|---|---|---|---|---|
| 1(u) Manager (Network) | | | X | |
| 1(v) Manager (Personnel) (# 57) | | | | X |
| 1(w) Manager (Marketing) (# 138) | | | X | X |
| 1(x) Manager (Marketing) | | | X | X |

| Transfer | Patterson | 2–Year Statute of Limitations | Retaliation | Refusal to Promote |
|---|---|---|---|---|
| 2(a) Law Clerk | X | | | |
| 2(b) Scan Alert/Packet Switching | X | | | |
| 2(c) Staff Associates, Regulatory | X | | | |
| 2(d) Rate Associate, Regulatory | | X | | |
| 2(e) Staff Associate, Comptroller | | X | | |
| 2(f) Bell Telephone Relations | | X | | |
| 2(g) Tariff/Costs | | X | | |

## TITLE VII

| Promotion | No EEOC Charge | 300–Day Statute of Limitations | No Retaliation Claim | No Failure to Promote Claim |
|---|---|---|---|---|
| 1(a) Specialist–Personnel | | X | | |
| 1(b) Manager (St. Rate Case Support) | | X | | |
| 1(c) Associate, Network of the Future | | X | | |
| 1(d) Specialist, Personnel | | X | | |
| 1(e) District Manager–Network Planning | | X | | |
| 1(f) Manager (Comptroller) (# 95) | | X | | |
| 1(g) Manager (Comptroller) (# 69) | | X | | |
| 1(h) Manager (Network) | | X | | |
| 1(i) Public Affairs | | X | | |
| 1(j) Director, Federal Regulatory | | X | | |
| 1(k) Claims Representative (# 24) | | | X | X |
| 1(l) Specialist–Personnel (# 36) | X | | | |
| 1(m) Temporary Specialist–Personnel | | | | X |
| 1(n) Manager (Labor Relations | | X | | |
| 1(o) District Manager–NECA | | X | | |
| 1(p) Attorney | | | X | X |
| 1(q) Manager (Labor Relations | X | | | |
| 1(r) Supervisor, Tax Research & Planning | X | | | |
| 1(s) Manager, Affirmative Action & EEO | X | | | |
| 1(t) Manager (Network) | | | X | |
| 1(u) Manager (Network) | | | X | |

| Promotion | No EEOC Charge | 300-Day Statute of Limitations | No Retaliation Claim | No Failure to Promote Claim |
|---|---|---|---|---|
| 1(v) Manager (Personnel) (# 57) | X | | | |
| 1(w) Manager (Marketing) (# 138) | | | X | X |
| 1(x) Manager (Marketing) | | | X | X |

| Transfer | No EEOC Charge | 300-Day Statute of Limitations | No Retaliation Claim | No Failure to Promote Claim |
|---|---|---|---|---|
| 2(a) Law Clerk | | | X | |
| 2(b) Scan Alert/Packet Switching | X | X | | |
| 2(c) Staff Associates, Regulatory | | X | | |
| 2(d) Rate Associate, Regulatory | | X | | |
| 2(e) Staff Associate, Comptroller | | X | | |
| 2(f) Bell Telephone Relations | | X | | |
| 2(g) Tariff/Costs | | X | | |

This leaves the plaintiff with viable claims involving the following jobs under the theories indicated.

**Failure-to-Promote Theory**

1(*l*) Specialist–Personnel
1(t) Manager (Network)
1(u) Manager (Network)

**Racial Discrimination**

1(t) Manager (Network)
1(u) Manager (Network)
2(a) Law Clerk

**Section 1981**
Retaliation Theory

1(m) Temporary Specialist–Personnel
1(v) Manager (Personnel)

**Title VII**
Retaliation Theory

1(m) Temporary Specialist–Personnel

---

## ON MOTIONS TO RECONSIDER

### I. *Introduction*

This cause comes before the court on two motions to reconsider this court's Entry Granting In Part And Denying In Part Defendant's Motion For Summary Judgment issued April 23, 1990. Neither the plaintiff nor the defendant is happy with the ruling, though each obviously has a different view as to why portions of the entry are incorrect. This entry will first give a relatively brief review of the plaintiff's employment discrimination claims regarding over thirty job opportunities and this court's ruling on the defendant's summary judgment motion. Second, I will assess the defendant's motion to reconsider, since it was filed first, and third, I will address the plaintiff's motion to reconsider.

### II. *Background*

While the plaintiff's discrimination claims are more fully set forth in the April 23, 1990, entry, this court will restate briefly the plaintiff's allegations. Plaintiff George J. Luddington, a black employee of Indiana Bell Telephone Co., filed a two-count complaint against his employer for its alleged actions and inactions with respect to his promotion and transfer opportunities. In count I, Luddington alleged race discrimination and retaliation by Indiana Bell in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17. In count II, Luddington alleged that Indiana Bell denied Luddington the same right to make and enforce contracts as is enjoyed by white citizens of the United States in violation of 42 U.S.C. § 1981. Altogether, Luddington alleges that Indiana Bell did not select him for promotion to twenty-eight job positions[1] and for seven transfers because of his race and/or in retaliation for previous charges of discrimination that he had filed.[2]

In the April 23, 1990, entry, this court discussed the plaintiff's section 1981 claims in light of the defendant's motion for summary judgment and held that most of the job denials were not actionable because they were barred by the applicable statute of limitations, they were no longer viable in the wake of *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), or they were not meritorious. This court then analyzed the plaintiff's Title VII claims and held that most were not actionable because they were barred by the statute of limitations, they were not included in the Equal Employment Opportunity Commission (EEOC) charge, or they were not meritorious. This court concluded that the plaintiff was left with viable claims involving the following jobs under the theories indicated.[3]

## Section 1981

Failure-to-Promote Theory

1(*l*) Specialist–Personnel
1(t) Manager (Network)
1(u) Manager (Network)

Retaliation Theory

1(m) Temporary Specialist–Personnel
1(v) Manager (Personnel)

## Title VII

Racial Discrimination

1(t) Manager (Network)
1(u) Manager (Network)
2(a) Law Clerk

Retaliation Theory

1(m) Temporary Specialist–Personnel

---

Both parties filed motions to reconsider the rulings as to specific jobs. As stated above, this court will first address the defendant's arguments and then the plaintiff's. One table set forth immediately below provides information regarding the specific jobs that are the subject of reconsideration. Another table in the conclusion of this entry provides information regarding applicable rulings on the motions to reconsider; it is an abridged version of the table provided in the April 23, 1990, entry, except for any changes that reflect this court's rulings on the motions to reconsider.

1. This includes the four job promotion positions that Luddington included in his "Supplemental Response to Interrogatory 1" in November 1988 and that this court barred from consideration due to the plaintiff's delay in raising them. The plaintiff requests, in part, that this court reconsider the ruling as to these four promotions—Director–ONA Market Development; Director–Technical Regulatory Liaison; Director–Switched Service Systems; and Director, BOC Personnel Support—which will be addressed in due course. These jobs were not included in the table at pages 37–41 of the April 23, 1990, entry, which summarized the court's holdings as to the rest of the jobs that were raised by the plaintiff in his complaint.

2. See the chart on pages 7–9 of the April 23, 1990, entry, which lists the specific job openings and other pertinent information.

3. See the table in the April 23, 1990, entry, pages 37–41, that summarizes which claims were or were not barred and the reason given.

| Promotions | IBT Employer | Mgmt. Level | Other BOC Employer | Date Filed |
|---|---|---|---|---|
| 1(e) District Manager–Network Planning | — | 3 | BOC | 04/10/84 |
| 1(i) Public Affairs | — | 3/4 | BOC | 10/01/84 |
| 1(k) Claims Representative (# 24) | IBT | 1 | — | 09/24/85 |
| 1(l) Specialist–Personnel (# 36) | IBT | 2 | — | 07/01/85 |
| 1(m) Temporary Specialist–Personnel | IBT | 2 | — | 08/05/85 |
| 1(o) District Manager–NECA | — | 3 | BOC | 09/24/84 |
| 1(p) Attorney | IBT | 4 | — | 05/85 |
| 1(q) Manager (Labor Relations) | — | 2 | BOC | 01/01/86 |
| 1(r) Supervisor, Tax Research & Planning | — | 3 | BOC | 04/01/86 |
| 1(s) Manager, Affirmative Action & EEO | — | 3 | BOC | 12/01/86 |
| 1(t) Manager (Network) | IBT | 2 | — | 10/01/85 |
| 1(u) Manager (Network) | IBT | 2 | — | 12/15/85 |
| 1(v) Manager (Personnel) (# 57) | IBT | 2 | — | 09/16/85 |
| 2(a) Law Clerk | IBT | N/A | — | 1984–85 |

## III. *Defendant's Motion to Reconsider*

The defendant requests reconsideration of the rulings regarding eight of the jobs. I will address each job in the order listed in the chart at the conclusion of this entry,[4] unless the defendant presents identical arguments regarding more than one job, in which case I will deal with all of those jobs in one subsection. Similarly, when the defendant challenges the section 1981 and the Title VII rulings as to the same job, both theories will be addressed in the same subsection.[5]

### A. Job 1(e) District Manager–Network Planning

■ The defendant moves for reconsideration of the section 1981 ruling regarding 1(e) District Manager–Network Planning. In the April 23, 1990, entry, this court granted summary judgment on Luddington's section 1981, failure-to-promote and retaliation claims as to job 1(e) because he did not meet his burden of proof on the merits. The defendant agrees with this holding, but contends that the claims also should have been dismissed because they were barred by the two year statute of limitations applicable to section 1981 claims. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Bailey v. Northern Indiana Public Serv. Co.*, 910 F.2d 406 (7th Cir.1990); *Movement for Opportunity & Equality v. General Motors Corp.*, 622 F.2d 1235 (7th Cir.1980).

The plaintiff filed his complaint on November 3, 1986; thus, this court held that any acts occurring prior to November 3, 1984, were barred from consideration. Indiana Bell contends that job 1(e) was filled on April 10, 1984. As explained in the earlier entry, however, the plaintiff stated in his affidavit that this date was the projected date that the opening would be filled. The actual employment selections for the "vast majority" of the posted vacancies, according to Luddington, were

---

**4.** This court continues to use the same notation system to identify the job openings that was used by the parties and this court in previous memoranda and entries.

**5.** The defendant challenges both the section 1981 and the Title VII rulings regarding the following four positions: 1(m) Temporary Specialist–Personnel; 1(t) Manager (Network); 1(u) Manager (Network); and 1(p) Attorney.

often made up to six months after the date printed on the job announcements. Plaintiff's Affidavit in Opposition to Defendant's Motion for a Summary Judgment, ¶¶ 8–10. Thus, the plaintiff argued that the allegedly discriminatory employment decisions occurred later than the dates listed in some circumstances. Even accepting this position as true, the defendant argues that job 1(e) was filled no later than six months after April 10, 1984, which would have been October 10, 1984. Thus, the defendant argues that job 1(e) is barred by the section 1981 statute of limitations. With regards to job 1(e), however, Luddington stated in his affidavit that "on or about November 15, 1984, my supervisor, Robert D. Wilson, Jr., informed me that defendant (upper management) declined to submit my application to the related company for enhanced employment opportunity consideration." Plaintiff's Affidavit in Opposition to Defendant's Motion for a Summary Judgment, ¶ 11.a. Luddington did not state that *all* of the job openings were filled within six months of the dates listed. Furthermore, he specifically alleged that a discriminatory action took place regarding job 1(e) within the two year time period. Construing these facts most favorably for the non-moving party, this court reaffirms its holding that the section 1981 claims regarding job 1(e) arose after November 3, 1984, and, thus, were not barred by the statute of limitations. Accordingly, this court DENIES the defendant's motion to reconsider the section 1981, statute of limitations holding as to job 1(e), but notes that this court's grant of summary judgment on the merits as to job 1(e) still stands unless the plaintiff is successful in his motion to reconsider.[6]

B. Job 1(1) Specialist–Personnel
 Job 1(t) Manager (Network)
 Job 1(u) Manager (Network)

With respect to job 1(1), the court concluded that the plaintiff's section 1981, failure-to-promote claim survived summary judgment. With respect to jobs 1(t) and 1(u), this court concluded that the plaintiff's section 1981, failure-to-promote claims and his Title VII racial discrimination claims survived. The defendant moves this court to reconsider the decisions regarding section 1981 for two reasons: the holding in *Patterson* precludes the plaintiff's claim, and the claims fail on their merits. After considering the defendant's section 1981 arguments, then I will address the Title VII arguments.

In the April 23, 1990, entry, this court held that "only those jobs that would have provided an increase in management level and significantly different responsibilities rise to the level of a 'new and distinct relation' that are sufficient claims under section 1981." Entry Granting In Part And Denying In Part Defendant's Motion For Summary Judgment, pp. 1560–1561. In reconsidering this decision, this court reviewed the growing number of published cases that have applied *Patterson*'s "new and distinct relation" language to those facts that do not fall squarely within the facts of *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).[7] *See, e.g., Crader v. Concordia College*, 724 F.Supp. 558 (N.D.Ill.1990) (refusal to promote assistant director to director would not have fundamentally altered relationship with employer in the sense called for by *Patterson*); *Long v. AT & T Information Sys., Inc.*, 733 F.Supp. 188, 196 (S.D.N.Y.1990) (refusal to promote from account executive industry consultant to staff manager, with pay increase of two grade levels, not sufficient under *Patterson*); *Brereton v. Communications Satellite Corp.*, 735 F.Supp. 1085 (D.D.C.1990) (noting that application of *Patterson* required consideration of the factual details of the relevant jobs, including the qualifications for promotion, types

---

**6.** *See infra* pp. 1579–1580.

**7.** The Supreme Court stated in *Patterson* that "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such

a claim actionable under § 1981." The Court went on to cite as analogous support *Hishon*, which involved a successful Title VII claim brought by an associate against her law firm for refusal to accept her into partnership. *Patterson*, 109 S.Ct. at 2377.

of daily duties, amount of responsibility, and change of status within the company); *Williams v. Chase Manhattan Bank*, 728 F.Supp. 1004, 1009 (S.D.N.Y.1990) (allowing refusal to promote claim regarding promotion from employee to bank officer, but not allowing claim regarding promotion from one supervisory position to a higher supervisory position); *Hudgens v. Harper–Grace Hosps.*, 728 F.Supp. 1321 (E.D.Mich. 1990) (allowing failure-to-promote, section 1981 claims involving promotions with changes in grade and pay, a move from a supervisory to a technical position, a move from a technical to a management position, and differences in qualifications); *see also McKnight v. General Motors Corp.*, 908 F.2d 104, 110 (7th Cir.1990) (noting that "the question of what constitutes a new employment relation under *Patterson* is difficult and unsettled" and stating that job changes within "the ordinary progression of a business executive in his career with a company" are not sufficient to establish a section 1981, failure-to-promote claim).

As the defendant points out, the record shows that all three of these job openings were second level management positions, the salary increases from first level to second level positions were between four to eight percent; there were no differences in fringe benefits between first and second level jobs except to the extent a benefit was tied to salary; both levels were responsible for supervising and evaluating subordinate employees; both levels had authority to approve expense request, but at different amounts—$250.00 for first level and $500.00 for second level; a first or a second level manager did not have authority to grant a pay increase, grant a promotion, grant a transfer, make a demotion or hire new employees; and corporate policy decisions were made by fifth level managers or above.

The plaintiff submitted his own supplemental affidavit in which he characterizes the differences between first and second level jobs much more drastically. For example, he states as follows:

6. The qualifications to be a central office supervisor [Level 1] were a technical knowledge and ability to assist and repair central office equipment.

. . . .

13. Level 2 Managers were not required to have a technical knowledge or an ability to repair central office equipment.

. . . .

18. Level 2 Managers used the Managerial Skills evaluations to determine the promotability and advancement of Level 1s.

19. Level 2 Managers were the decision makers regarding the salary increases, bonus increases, work schedules, vacations and other terms and conditions of the employment of a level 1 supervisor.

■ However, many of the statements in the plaintiff's supplemental affidavit are deficient because they fail to meet the strict requirements of Federal Rule of Civil Procedure 56(e).[8] The plaintiff does not state or otherwise show how the above-quoted paragraphs and similar statements were within his personal knowledge. *See Toro Co. v. Krouse, Kern & Co.*, 827 F.2d 155, 162–63 n. 3 (7th Cir.1987) ("Rule 56(e)'s requirement of personal knowledge is mandatory."). Thus, much of the plaintiff's evidence cannot be considered in determining whether the promotions present a "new and distinct relation."

This court stated that in order to show a new and distinct relation, the plaintiff must show an increase in management level and "significantly" different responsibilities. This court acknowledges that the use of the term "significant" provides little specific guidance to employers and employees. Nonetheless, this court need not try to more clearly draw the line in this case, because the plaintiff does not provide sufficient evidence to meet even the most liberal interpretation of "significantly different responsibilities." Thus, upon reconsideration

---

**8.** Federal Rule of Civil Procedure 56(e) states, in pertinent part, as follows: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

of the defendant's motion for summary judgment as to jobs 1(1), 1(t), and 1(u), this court will GRANT the defendant's motions for reconsideration and for summary judgment and will dismiss all of the section 1981, failure-to-promote claims in light of the holding in *Patterson*. Having determined that the section 1981, failure-to-promote claims regarding these jobs fail under *Patterson*, this court will not address the defendant's second argument that these claims, if they had survived *Patterson*, should fail on their merits.

■ The defendant also challenges the rulings on the plaintiff's Title VII, racial discrimination claims regarding jobs 1(t) and 1(u). Jobs 1(t) and 1(u) involved the job openings for the same position, Manager (Network), which was filled twice in a relatively short period of time. The record shows that David A. Frost, the District Manager who was responsible for filling the opening for Network Manager in Gary, Indiana, considered six individuals who were qualified for the position—including Luddington. Frost stated he wanted to hire someone with strong central office conversion and ESS experience. Frost interviewed and hired Larry Arbeiter, a white male, for job 1(t) because, according to Frost, Arbeiter had the ability to interact with the other managers and had the best background for central office conversions out of the six applicants considered for the job. Affidavit of David A. Frost. Arbeiter states in his affidavit that he began working on ESS conversions in 1978 and continued to do so for seven years. He supervised the ESS conversion of the Anderson central office in 1978 and 1979, and from January 1980 to early 1985, he supervised the ESS conversion of four central offices in Indianapolis. He further states that he had communicated verbally to Indiana Bell that he was willing to relocate intrastate,

and he also changed his Form 2930 in June 1985 to so indicate his willingness to relocate. In the fall 1985, Arbeiter's appraisal code rating was the highest rating possible ("E") with the highest ratings possible in all categories ("5"), which assessed managerial skills. Affidavit of Larry A. Arbeiter. After Arbeiter was offered and had accepted the position, Luddington told his supervisor that Arbeiter was "deserving of the promotion" and that Luddington probably would not have moved to Gary, Indiana anyway. Affidavit of Stuart Boner; Luddington Deposition, p. 465. This information was communicated to Frost after he had hired Arbeiter to fill job 1(t).

Arbeiter left the position within a few months, which required Frost to fill the job again. Frost reconsidered the list of qualified applicants that he had considered for job 1(t). Frost chose another white male, Bruce Fleck, to fill job 1(u), which was the opening created by Arbeiter's departure. Fleck was rated "E" and most promotable and was willing to relocate. Furthermore, Frost's superiors had told Frost that Fleck was on a "fast track," which Frost took to mean that Fleck was a high potential candidate. Affidavit of David A. Frost.

Luddington asserts in his memorandum in opposition to the defendant's motion for summary judgment that he had as much or more background in ESS and central office conversion as Arbeiter and Fleck, as well as more education, citing to his exhibits 14 and 15. Apparently, Luddington is referring to the 2930 forms, which profile Arbeiter's and Luddington's experience, education, interests and evaluation ratings. Luddington points to his experience set out on his 2930 form as compared to Arbeiter's experience as set forth on Arbeiter's 2930 form as evidence that Luddington had as much or more experience in central office conversion and ESS.[9] Luddington, how-

---

**9.** Specifically, Luddington points to the following information on his form 2930 as setting forth his experience that was applicable to the job opening.

| Experience | Number of Years |
| --- | --- |
| 1. Local Switching—# 2 ESS | 5 years |
| 2. Local Switching—101 ESS | 5 years |
| 3. Equipment Installation—# 2 ESS | 5 years |
| 4. Local Switching—# 3 ESS | 1 year |
| 5. Equipment Installation—# 3 ESS | 1 year |

Luddington then refers to Arbeiter's form 2930 and asserts that Arbeiter's only experience

ever, does not explain or otherwise show the significance of the information contained on the 2930 forms. Furthermore, the forms do not make any direct reference to conversion experience, and it is impossible for this court to infer from the unexplained data that Luddington had more relevant experience than Arbeiter. Luddington does have a law degree, while Arbeiter's highest degree is a bachelor degree in accounting. Job 1(t), however, did not require a law degree, and thus, the differences in education are not relevant. Upon reexamining the affidavits and exhibits, this court finds that the defendant has articulated a legitimate, nondiscriminatory reason for choosing Arbeiter for job 1(t), i.e., because he was more qualified, and that the plaintiff has failed to establish sufficient evidence that Frost's reasons for choosing Arbeiter were a pretext for intentional race discrimination. *See Klein v. Trustees of Indiana Univ.*, 766 F.2d 275, 282 (7th Cir.1985); *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 366 (7th Cir.1983). Thus, this court will GRANT the defendant's motion to reconsider as to the plaintiff's racial discrimination, Title VII claim as to job 1(t) and will GRANT summary judgment in favor of the defendant.

■ The Title VII claim regarding job 1(u) will also meet a similar fate. Luddington admits that he told his supervisor after the position was filled that he was not willing to move to Gary, Indiana for the Network Manager job. Frost was informed of Luddington's statement. Even assuming that Luddington did not mean what he said to his supervisor and was still willing to relocate, as Luddington testified in his deposition, Frost did not know this at the time that he was considering applicants for job 1(u). Thus, when the position became open shortly thereafter, it is quite reasonable that Frost did not offer the position to Luddington based upon Luddington's statements that he was unwilling to relocate. Therefore, this court will also GRANT the defendant's motions to reconsider and for summary judgment as to the plaintiff's racial discrimination, Title VII claims as to job 1(u).

C. Job 1(m) Temporary Specialist–Personnel

Job 1(v) Manager (Personnel)

■ In the April 23, 1990, entry, this court denied the defendant's motion for summary judgment as to the plaintiff's section 1981, retaliation claims regarding jobs 1(m) and 1(v). Subsequently, the Seventh Circuit Court of Appeals issued its opinion in *McKnight*, holding that "the rights that antidiscrimination laws such as Title VII and section 1981 and their state equivalents confer on employees are not contract rights" and, thus, retaliation claims brought to enforce such rights are not actionable under section 1981. *McKnight*, 908 F.2d at 112.

Luddington's retaliation claims are based upon his allegations that Indiana Bell was retaliating against him because he had previously filed charges and a lawsuit under Title VII or section 1981. In Plaintiff's Supplemental Memorandum in Support of Denial of Summary Judgment filed August 17, 1990, Luddington tries to change the theory of his retaliation claim and requests time for additional discovery in order to support his allegation that there was a "contractual duty forbidding discrimination" that is the basis of his retaliation claims. Luddington clearly sees the writing on the wall and is scrambling for a new theory and facts in light of *McKnight*. There is no evidence to support the plaintiff's latest assertion that Indiana Bell retaliated against him for trying to enforce some express or implied contractual right. Luddington has always maintained that his previous EEOC claims and lawsuit were efforts to enforce his rights under antidiscrimination laws. In light of *McKnight*, the plaintiff's retaliation claims fail under section 1981, and his request for additional discovery is DENIED. Accordingly, the defendant's motions to reconsider and for

that was relevant to the job opening, as set forth below, was less or equal to Luddington's experience.

| Experience | Number of Years |
|---|---|
| 1. Local Switching—# 1 ESS | 1 year |
| 2. Equipment Installation— # 1 ESS | 1 year |

summary judgment will be GRANTED as to the plaintiff's section 1981, retaliation claims regarding jobs 1(m) and 1(v) [10].

██ With regards to job 1(m), the defendant also challenges this court's ruling regarding the plaintiff's Title VII, retaliation theory. Job 1(m) was a second level management opening for a Temporary Specialist in Personnel to fill the position left open by Cynthia Bates, who went on maternity leave in August 1985 and returned December 1, 1985. Philip E. Junker was responsible for filling the temporary opening, and he selected Frank Thomas, a first level employee in Personnel who had reported to Bates. Junker did not consider anyone else to fill the position. When Bates returned from maternity leave, Thomas resumed his first level duties.

Luddington argues that his EEO experience gained while pursuing his law degree makes him more qualified than Thomas. Thomas, however, had been working in Personnel with Bates and Junker, and Thomas was clearly more familiar with the interoffice procedures, as well as Bates's responsibilities. It is reasonable to choose Thomas, who would require little, if any, training, over Luddington, who had never worked in the Personnel Department and who would require more training to fill the temporary job. Thus, this court cannot infer retaliation based upon a comparison of Luddington's and Thomas's qualifications.

This court denied the defendant's motion for summary judgment as to the plaintiff's Title VII retaliation claim as to job 1(m) because Luddington had alleged that during a conversation with Junker, Junker had told Luddington that Luddington was perceived as a high risk due to his previous litigation. Because Junker was involved in the decision to fill job 1(m), this court held that this was sufficient evidence of retaliation under Title VII to survive summary judgment. As the defendant points out in its motion to reconsider, however, Luddington stated in his affidavit that this conver-

sation took place in December 1985 or January 1986. Affidavit of Luddington in Opposition to Summary Judgment, ¶ 16. Clearly, this is after the job was filled and even after Bates had returned to work. Furthermore, Luddington does not allege that Junker said that Junker was afraid to hire Luddington or that Junker was specifically referring to job 1(m). Based upon a review of the pertinent affidavits, this court finds that Luddington has failed to raise an issue of material fact; thus, this court will GRANT the defendant's motions to reconsider and for summary judgment as to the plaintiff's Title VII, retaliation claim as to job 1(m).

### D. Job 1(p) Attorney

Both the defendant and the plaintiff request this court to reconsider the granting of summary judgment as to job 1(p) Attorney. The defendant argues that this court relied on an incorrect fact when granting summary judgment, but argues that there are other reasons upon which this court could base summary judgment. The plaintiff, on the other hand, also points to the reliance on the incorrect fact, but argues that there are no other reasons to grant summary judgment.

Job 1(p) was an attorney position with Indiana Bell's in-house Legal Department in the summer of 1985. This court held that Luddington had failed to establish a prima facie case because he did not show that someone other than a black person was chosen to fill the vacancy, citing to the fact that Joset Wright–Lloyd, a black attorney, was hired for the position. Entry Granting In Part And Denying In Part Defendant's Motion For Summary Judgment, p. 24. Both parties are correct in pointing out that while Wright–Lloyd was hired for an attorney position, it was not for job 1(p). Dennis Meyers, white, was the person who was hired to fill job 1(p) in 1985. Thus, this court GRANTS both parties' motions to reconsider as to job 1(p) and must determine whether there is any

---

**10.** The plaintiff moves for reconsideration of this court's ruling on job 1(v) regarding the granting of summary judgment on his section 1981, refusal-to-promote claim. This will be addressed in the section regarding the plaintiff's motion to reconsider. *See infra* pp. 1580–1581.

other reason to grant summary judgment for the defendant.

■■■ The defendant urges this court to grant summary judgment because the position had already been filled when Luddington expressed his interest.[11] The record shows that Richard Besore met with Luddington on July 23, 1985, to discuss Luddington's desire to work in the Legal Department. Besore stated in an affidavit that Indiana Bell had been seeking to hire an attorney with strong private practice experience in regulatory matters. Meyers was interviewed for the job in April 1985 and accepted the job offer in May 1985, according to Meyers's affidavit. Meyers's start date was August 1, 1985. Thus, job 1(p) was no longer open when Luddington met with Besore to express interest in the position. Luddington does not dispute these facts in his motion to reconsider. Thus, this court will GRANT the defendant's motion for summary judgment as to job 1(p) Attorney based upon the merits.

### E. Job 2(a) Law Clerk

This court held that the plaintiff had a viable race discrimination claim under Title VII as to job 2(a) Law Clerk. The defendant makes several arguments, but this court need only address one to find that summary judgment should be granted for this job. The defendant points out that the Law Clerk position was not the subject of any EEOC charge. In the April 23, 1990, entry, this court held that any jobs not listed in the EEOC charge were not sufficiently related to the claims in the EEOC charge and were barred. Based upon a review of the EEOC charge, this court finds that job 2(a) Law Clerk was not included in that charge. Luddington admits this, but argues that jobs 1(k) Claims Rep-

resentative and 1(e) Attorney, which were listed in the EEOC charge, were sufficient to implicate the Law Clerk job. This court finds no merit in this argument. The plaintiff is an attorney, who was very specific in his EEOC charge as to which jobs were involved. He was obviously capable of adding the Law Clerk position if he had so chosen. He did not. Thus, this court will GRANT the defendant's motions to reconsider and for summary judgment as to the plaintiff's racial discrimination, Title VII claim as to job 2(a) Law Clerk because it was not the subject of the plaintiff's EEOC charge.

### IV. *Plaintiff's Motion to Reconsider*

The plaintiff moves to reconsider twelve job openings. Subsection A addresses claims regarding four promotion opportunities that this court did not allow the plaintiff to argue because he failed to raise them before the close of discovery and before the defendant had filed its motion for summary judgment. Subsection B addresses the plaintiff's motion to reconsider this court's grant of summary judgment regarding the plaintiff's section 1981, refusal-to-promote claims regarding six BOC jobs.[12] Subsections C and D address the plaintiff's claims regarding two jobs in Indiana Bell's Legal Department: a section 1981, failure-to-promote claim as to job 1(k) Claims Representative; and section 1981 and Title VII claims as to job 1(p) Attorney. Finally, subsection E deals with the plaintiff's request to reconsider the ruling as to the section 1981, failure-to-promote claim as to job 1(v) Manager (Personnel).

### A. Director–ONA Market Development
Director–Technical Regulatory Liaison
Director–Switched Service Systems
Director–BOC Personnel Support

---

**11.** Indiana Bell also argues that summary judgment should be granted based on the evidence that Indiana Bell generally hired experienced attorneys from outside the company and that Luddington was a new attorney with no outside legal experience. While the evidence appears to strongly support the defendant's position, this court does not need to address this argument because the defendant's first argument is dispositive.

**12.** BOC job openings are those openings that arise outside of Indiana Bell with other Bell Operating Companies and their affiliates, but that are posted within Indiana Bell's Management Resource Center (MRC). *See* Entry Granting In Part And Denying In Part Defendant's Motion For Summary Judgment, pp. 1555–1556 (explains in more detail the procedure for filling BOC jobs openings).

In the April 23, 1990, entry, this court held that the plaintiff could not raise any claims regarding these four promotions because he had not informed the defendant that he was alleging discrimination regarding these positions until after discovery was closed and over a month after the filing of the defendant's motion for summary judgment. Luddington argues that Indiana Bell was on notice of these claims prior to the close of discovery because he questioned William Overby, an Indiana Bell employee, about these four jobs at a deposition. The plaintiff does not raise any new arguments to convince this court to reconsider its decision to not allow the plaintiff to raise these claims at such a late date. As the defendant points out, Luddington contends that he applied for and was denied these jobs well before discovery was closed in this case.[13] The defendant filed its motion for summary judgment on September 16, 1988. Luddington failed to identify these jobs in his 1987 response to Indiana Bell's interrogatory that asked Luddington to identify specifically each and every job on which he was making a claim. Luddington further failed to supplement his answer before discovery was closed and, in fact, waited approximately six weeks after the motion for summary judgment was filed to file a "Supplemental Response to Interrogatory 1," which raised for the first time Luddington's intention to pursue his claims regarding these four jobs in this forum. Simply because Luddington asked Overby questions about these jobs in a deposition is not sufficient to notify Indiana Bell that Luddington intended to pursue claims regarding these jobs, especially in light of the fact that Luddington failed to list these jobs in the answer to an interrogatory that clearly requested this information. Indiana Bell was correct in assuming that Luddington had chosen not to pursue any claims regarding these four jobs, and Luddington's attempt to raise them now is too little, too late. Thus, Luddington's motion to reconsider is DE-NIED with regards to any claims pertaining to the following jobs: Director–ONA Market Development; Director–Technical Regulatory Liaison; Director–Switched Service Systems; and Director–BOC Personnel Support.

B. Job 1(e) District Manager–Network Planning

Job 1(i) Public Affairs

Job 1(o) District Manager–NECA

Job 1(q) Manager (Labor Relations)

Job 1(r) Supervisor, Tax Research & Planning

Job 1(s) Manager, Affirmative Action & EEO

This court granted the defendant's motion for summary judgment as to the section 1981, refusal-to-promote claims regarding the above-listed BOC jobs based upon the plaintiff's failure to meet his burden of proof. More specifically, this court held as follows:

[T]he plaintiff does not meet his burden on his refusal-to-promote claim because he fails to show that the defendant did deliver the applications of similarly or lower qualified non-minority persons to the BOCs for consideration of employment as to those six specific jobs to which the plaintiff had also applied. Furthermore, as the defendant points out, Luddington testified in his deposition that he was not aware of any instance, except for one that involved a human resources Level 3 BOC job, in which an Indiana Bell employee did not pursue Luddington's interest in job openings.

Entry Granting In Part And Denying In Part Defendant's Motion For Summary Judgment, pp. 1562–1563.

Luddington contends that he cannot provide comparative information regarding similarly or lower qualified non-minority applicants for these specific jobs because such information "is in the exclusive control of IBT and IBT will not produce the same." Plaintiff's Motion and Memoran-

**13.** Luddington states that he applied for each job in 1986. Even assuming that he was not denied the positions until later in 1987, Luddington had ample time and opportunity to raise any claims regarding these jobs before discovery was closed and before the defendant filed its motion for summary judgment in 1988.

dum for Reconsideration of Summary Judgment, p. 5. Indiana Bell points out, however, that it responded to the plaintiff's discovery requests by stating that Indiana Bell does not retain applications or records of employees who applied for BOC positions.

The burden is on the plaintiff to prove by a preponderance of the evidence a prima facie case of discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In order for the plaintiff to establish a prima facie case regarding his refusal-to-promote claims, he must show by a preponderance of the evidence that he was a member of a protected class, that he applied for promotion and was qualified, that despite his qualifications he was rejected, and that others not in the protected class but with the plaintiff's or lower qualifications were promoted. *See Bigby v. City of Chicago*, 766 F.2d 1053 (7th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986). Clearly, Indiana Bell has produced all of the information possible that Luddington requested. Luddington admits that he has no evidence that Indiana Bell delivered the applications of similarly or lower qualified non-minority persons to the BOCs for these six job openings; thus, he has simply failed to meet his burden of establishing a prima facie case. Thus, this court DENIES the plaintiff's motion to reconsider the granting of the defendant's motion for summary judgment as to these six job openings.

### C. Job 1(k) Claims Representative

The plaintiff moves for reconsideration of this court's grant of summary judgment for the defendant regarding the plaintiff's section 1981, failure-to-promote claim as to job 1(k). Job 1(k) was a Level 1 Claims Representative position; the duties of the job involved investigating and documenting information concerning claims made against Indiana Bell, according to the affidavit of Richard O. Creedon, the person responsible for hiring the claims representative. Creedon testified at his deposition that while he wanted to hire an applicant from outside the company, he only considered applicants already employed by Indiana Bell because of the surplus of employees. This court dismissed this claim based upon *Patterson* because it did not involve a promotion, but rather a transfer from a Level 1 to another Level 1 position. Luddington argues, however, that based upon the reasoning in *McKnight*, the transfer to job 1(k) was an opportunity for a new and distinct employment relationship. The plaintiff states that a "new employment relationship" might be established if the open position could be filled by applicants from outside the organization. He also urges that if a transfer involves a move to a significantly different job in an unrelated division, this "conceivably" may also create a new employment relationship. Plaintiff's Motion and Memorandum for Reconsideration of Summary Judgment, p. 5 (quoting *McKnight*, 908 F.2d at 110).

In *McKnight*, the Seventh Circuit held that the transfer of an executive from the accounting to the manufacturing division in the same plant was "the ordinary progression of a business executive in his career with a company." *McKnight*, 908 F.2d at 110. While the court did state that "[c]onceivably, if the two divisions are unrelated and the employee's jobs in the divisions are significantly different, the transfer might ... count as the creation of a new employment relationship," the court did not find a new employment contract that raised a section 1981 claim under the *Patterson* analysis. *Id.*

Based upon the holding in *McKnight* and the district court cases that have applied *Patterson*, this court finds no reason to reconsider its holding as to job 1(k) Claims Representative.

### D. Job 1(p) Attorney

The plaintiff requested that this court reconsider its grant of summary judgment as to job 1(p) Attorney because I relied incorrectly on the belief that a black person was selected for the job in determining that the plaintiff had not set forth a prima facie case of racial discrimination. I did recon-

sider my ruling above [14] and found that, in fact, a white male was selected for job 1(p). However, based on the additional arguments of the defendant, I determined that summary judgment should be granted in favor of Indiana because at the time that Luddington expressed interest in the position, an experienced attorney from outside Indiana Bell had already accepted an offer with the company. Thus, the position was not even open when Luddington claims that he was unlawfully denied the job. Thus, upon reconsideration, this court will still GRANT the defendant's motion for summary judgment as to job 1(p) Attorney.

### E. Job 1(v) Manager (Personnel)

In the April 23, 1990, entry, this court granted summary judgment in favor of the defendant on the plaintiff's section 1981, failure-to-promote claim as to job 1(v) Manager (Personnel). Specifically, this court held as follows:

> Luddington fails to support his allegations regarding position 1(v) Manager (Personnel). He asserts that Elaine Lucas, a white female, was "promoted" to the position after he was told that his application would not be considered because no promotion would be made. However, Luddington fails to cite to any portion of the record that supports his assertion that Lucas was promoted. The plaintiff cannot make unsupported allegations in order to survive a motion for summary judgment.

Entry Granting In Part And Denying In Part Defendant's Motion For Summary Judgment, p. 1564.

The plaintiff admits that he failed to refer to portions of the record that supported his argument, but now points this court to a portion of Junker's deposition in which Junker states that Lucas, who was a second level manager, was hired for job 1(v), which "promoted" her from "low band" second level to "high band" second level.[15] Deposition of Philip E. Junker, p. 87. This new job did raise Lucas's salary, but this does not dispute the fact that no first level supervisors were promoted or even considered for the job opening. Luddington was treated no differently than any other first level supervisor. Thus, this court DENIES the plaintiff's motion to reconsider this court's grant of summary judgment in favor of the defendant as to the plaintiff's section 1981, failure-to-promote claims as to job 1(v) Manager (Personnel).

### IV. *Conclusion*

Based upon a review of the record and the reasoning set forth above, this court holds that all of the plaintiff's section 1981 and Title VII claims do not survive summary judgment, and this court will GRANT the defendant's motion for summary judgment as to all counts. This court's rulings as to specific jobs that were the focus of the motions to reconsider are summarized below.

#### SECTION 1981

| | Promotion | Patterson | 2–Year Statute of Limitations | No Retaliation Claim | No Refusal to Promote Claim |
|---|---|---|---|---|---|
| 1(e) | District Manager–Network Planning | | | X | X |
| 1(i) | Public Affairs | | | X | X |
| 1(k) | Claims Representative (# 24) | X | | | X |
| 1(l) | Specialist–Personnel (# 36) | X | | X | |
| 1(m) | Temporary Specialist–Personnel | | | X | X |

---

14. *See supra* pp. 1577–1578.

15. There are two salary steps or "bands" within the second level management position: Level 2–1 and Level 2–2.

| | Promotion | Patterson | 2–Year Statute of Limitations | No Retaliation Claim | No Refusal to Promote Claim |
|---|---|---|---|---|---|
| 1(o) | District Manager–NECA | | | X | X |
| 1(p) | Attorney | | | X | X |
| 1(q) | Manager (Labor Relations) | | | X | X |
| 1(r) | Supervisor, Tax Research & Planning | | | X | X |
| 1(s) | Manager, Affirmative Action & EEO | | | X | X |
| 1(t) | Manager (Network) | X | | X | |
| 1(u) | Manager (Network) | X | | X | |
| 1(v) | Manager (Personnel) (# 57) | | | X | X |

### TITLE VII

| | Promotion | No EEOC Charge | 300–Day Statute of Limitations | No Retaliation Claim | No Failure to Promote Claim |
|---|---|---|---|---|---|
| 1(m) | Temporary Specialist–Personnel | | | X | X |
| 1(p) | Attorney | | | X | X |
| 1(t) | Manager (Network) | | | X | X |
| 1(u) | Manager (Network) | | | X | X |
| | Transfer | | | | |
| 2(a) | Law Clerk | X | | X | |

## ENTRY DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL

This cause comes before the court on Plaintiff's Motion For A New Trial in which plaintiff George J. Luddington requests a "new trial" because this court's findings and conclusions in the entry granting summary judgment for defendant Indiana Bell Telephone Company are "clearly erroneous, not sustained by sufficient evidence, and are contrary to law." The defendant filed a response in opposition in which the defendant argues that plaintiff's motion for a new trial is technically flawed because there was no "trial" in this case at all. Even if this motion is treated as a motion to reconsider, the defendant argues that the parties have had ample opportunities to brief their respective positions and that the plaintiff does not raise any new arguments that warrant reconsideration of the court's entry of summary judgment for the defendant.

George Luddington, a black employee with Indiana Bell, thinks that his employer has discriminated against him because of his race and/or retaliated against him by allegedly denying him twenty-eight promotions and seven transfers.[1] Thus, he filed this cause of action alleging violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17. On April 23, 1990, this court issued a forty-two page Entry Granting In Part And Denying In Part Defendant's Motion For Summary Judgment, which held that the plaintiff's claims regarding six jobs survived the motion for summary judgment.[2] Subsequently, both

1. See the chart on pages 1556–1557 of this court's April 23, 1990, entry, which lists the specific job openings and other pertinent information.

2. The April 23, 1990, entry held that the defendant was entitled to summary judgment except for the plaintiff's claims involving the following jobs under the theories indicated. The number and letter designations for each job is the same notation system used in previous entries and memoranda.

the plaintiff and the defendant filed motions to reconsider portions of the April 23, 1990 entry, both of which were fully briefed by the parties. After carefully reviewing the voluminous record in this case, including all of the briefs submitted by the parties on the reconsideration, this court issued a thirty-two page Entry Regarding Defendant's And Plaintiff's Motions To Reconsider Entry Granting In Part And Denying In Part Defendant's Motion For Summary Judgment dated February 1, 1991. In that entry, this court held that the defendant was entitled to summary judgment on *all* of the plaintiff's claims. On February 11, 1991, the plaintiff filed a "Motion For A New Trial" with an accompanying memorandum, and the defendant has responded.

██ Essentially, the plaintiff argues that this court should reconsider [3] the summary judgment with respect to nineteen jobs. He not only challenges this court's decision to grant summary judgment as to those claims regarding the six jobs that initially survived the first summary judg-

ment motion but fell after consideration of the defendant's motion for reconsideration, but the plaintiff also continues to request reconsideration of the claims regarding thirteen jobs that did not survive the defendant's motion for summary judgment nor the attempted revival by the plaintiff's first motion for reconsideration. The plaintiff does not raise any reason in his second motion for reconsideration that would cause this court to revisit the arguments for a third time. Thus, for all of the reasons articulated by this court in its previous entries, summary judgment for the defendant stands as to the claims regarding the following jobs: Director–ONA Market Development; Director–Technical Regulatory Liaison; Director–Switched Service Systems; Director, BOC Personnel Support; 1(e) District Manager–Network Planning; 1(i) Public Affairs; 1(k) Claims Representative; 1(o) District Manager–NECA; 1(q) Manager (Labor Relations); 1(r) Supervisor, Tax Research & Planning; 1(s) Manager, Affirmative Action & EEO; 1(w)

### Section 1981

| Failure-to-Promote Theory | | Retaliation Theory | |
|---|---|---|---|
| 1(l) | Specialist–Personnel | 1(m) | Temporary Specialist–Personnel |
| 1(t) | Manager (Network) | | |
| 1(u) | Manager (Network) | 1(v) | Manager (Personnel) |

### Title VII

| Racial Discrimination | | Retaliation Theory | |
|---|---|---|---|
| 1(t) | Manager (Network) | 1(m) | Temporary Specialist–Personnel |
| 1(u) | Manager (Network) | | |
| 2(a) | Law Clerk | | |

3. The defendant points out that a motion for a new trial, as provided for in Federal Rule of Civil Procedure 59(a), is not a proper motion in a case decided at the summary judgment stage. However, the plaintiff's motion does question the substance of the summary judgment, which is essentially a motion to alter or amend the judgment as provided for in Federal Rule of Civil Procedure 59(e). Thus, this court will treat the plaintiff's motion as a motion under Federal Rule of Civil Procedure 59(e), regardless of how the plaintiff has titled the motion. *Cf. St. Marys Hosp. Medical Center v. Heckler,* 753 F.2d 1362, 1364–65 (7th Cir.) (holding that a motion fashioned by the party as falling under Federal Rule of Civil Procedure 52(b) rather than 59(e) was not dispositive), *cert. denied,* 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985); *A.D. Weiss Lithograph Co. v. Illinois Adhesive Prods. Co.,* 705 F.2d 249 (7th Cir.1983) (noting that court must look to the body of the motion and not the caption to determine whether the movant is challenging the judgment under Federal Rule of Civil Procedure 59(e) or 60(b)).

Manager (Marketing); and 1(x) Manager (Marketing).[4]

With respect to the claims regarding the six jobs that this court granted summary judgment after reconsideration, this court finds no reason to reconsider its ruling based upon the plaintiff's latest motion for reconsideration. Luddington asserts that this court has misapplied the summary judgment standard by "weighing the competing evidence." Based upon the burden of proof in a race discrimination/retaliation case and a review of the record, I found that the plaintiff had not raised a material issue of fact that precluded summary judgment and that the law was in favor of the defendant. The plaintiff does not convince this court that the conclusion was erroneous.

The plaintiff also re-argues the "like and reasonable related" doctrine with respect to whether job 2(a) Law Clerk was included in his EEOC charge. Again, the plaintiff cites no cases or any new reasons that might persuade this court to change the ruling as to the viability of the claims regarding job 2(a) Law Clerk.

This court has considered all of the arguments raised in the briefing of defendant's motion for summary judgment and motion for reconsideration and plaintiff's two motions for reconsideration and has addressed the claims brought by the plaintiff very deliberately in two extensive entries. Finding no reason to reconsider the summary judgment entered in favor of defendant Indiana Bell and against plaintiff Luddington, this court DENIES the plaintiff's Motion For A New Trial.

---

**4.** This court barred the plaintiff from raising claims regarding the first four jobs listed because they were not raised until after discovery was closed and the summary judgment motion had been filed. The plaintiff now argues that his Supplemental Response to Interrogatory 1, in which he raised for the first time his intention to pursue his claims regarding these four jobs, was simply a Motion to Amend or Supplement Complaint pursuant to Federal Rule of Civil Procedure 15(a). At no time did the plaintiff request leave to amend his complaint, and this court finds it incredible to suggest otherwise.